1  JEAN C. WILCOX, ESQ. (SBN 097963)
   Email address: jeanw@hhlawgroup.com
2  CLAUDIA MOURAD, ESQ. (SBN 211139)
   Email address: claudiam@hhlawgroup.com
3  HERSHORIN & HENRY, LLP
4  27422 Portola Parkway, Suite 360
   Foothill Ranch, California 92610
5  Phone: (949) 859-5600/Fax: (949) 859-5680

6  Attorneys for Plaintiff, FEDERAL DEPOSIT
   INSURANCE CORPORATION, as Receiver
7  for Downey Savings & Loan Association, F.A.
8

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN - 3 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

9              **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11
                                      **SACV11-840 DOC(RNBx)**
12  FEDERAL DEPOSIT INSURANCE          CASE NO.:
    CORPORATION, as Receiver for Downey
13  Savings and Loan Association, F.A.,    *Exempt from Filing Fees 18 U.S.C. § 3006A*

14              Plaintiff,             **COMPLAINT FOR**
                                       **DAMAGES FOR:**
15
    vs.
16
                                       (1)  BREACH OF CONTRACT
17  AMERIFUND FINANCIAL, INC., a       (2)  PROFESSIONAL
    California corporation; ERIC MATTHEW         NEGLIGENCE
18  ANDERSON, an individual; MICHAEL
    DALE MAURICIO, an individual; ANDRE   (3)  NEGLIGENT
19  WISHON HOWELL, an individual; MOISES        MISREPRESENTATION
20  PACHECO, an individual; SAMUEL ASHBY  (4)  FRAUD
    SMITH, an individual; MICHAEL RUDD, an
21  individual; CURTIS PAGE, an individual;  (5)  PROFESSIONAL
22  ELIZABETH PETERSON, an individual;          NEGLIGENCE
    TOM OHANLON, an individual; JOHN D.   (6)  BREACH OF CONTRACT
23  SLINGER, an individual; ANN K.        (7)  FRAUD
    DONOVAN, an individual; CHRIS
24  GALLEGOS, an individual; PAM
25  GALLEGOS, an individual; ANTHONY
    NORMAN, an individual; PETRA WHITE, an
26  individual;                          **DEMAND FOR JURY TRIAL**

27              Defendants.
28

                    COMPLAINT FOR DAMAGES

1
2

# Table of Contents

Page Number

3  I.  JURISDICTION & VENUE .................................................................................1

4  II.  THE PARTIES.....................................................................................................1

5  
6  *A.*  *The FDIC as Receiver for Downey Savings* .................................................1

7  *B.*  *The Brokers and Loan Officers* ..................................................................1

8  *C.*  *Anderson as Amerifund's Alter Ego* ...........................................................3

9  *D.*  *Mauricio, Howell, Pacheco and Smith as Loan Officers* ............................6

10  III.  GENERAL ALLEGATIONS ...............................................................................7

11  
12  *A.*  *Donovan Loan* .............................................................................................7

13  *B.*  *Gallegos Loan*.............................................................................................9

14  *C.*  *Manuel Loan*..............................................................................................12

15  *D.*  *Norman Loan*..............................................................................................15

16  *E.*  *White Loan*..................................................................................................17

17  *F.*  *Worthy Loan* ...............................................................................................20

18  IV.  COUNT ONE; BREACH OF CONTRACT
19  (Against Amerifund and Anderson) ...................................................................23

20  V.  COUNT TWO; PROFESSIONAL NEGLIGENCE
21  (Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)..........24

22  VI.  COUNT THREE; NEGLIGENT MISREPRESENTATION
23  (Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)..........26

24  VII.  COUNT FOUR; FRAUD
25  (Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)..........30

26  VIII.  COUNT FIVE; PROFESSIONAL NEGLIGENCE
27  (Against Appraisers Rudd, Page, Peterson, Ohanlon and Slinger) ....................33

28  IX.  COUNT SIX; BREACH OF CONTRACT
(Against Borrowers Donovan, Gallegos, Norman, and White)...........................38

-i-

X.   COUNT SEVEN; FRAUD
     (Against Borrowers Donovan, Gallegos, Norman and White)...........................39

XI.  PRAYER.............................................................................................................41

1  COMES NOW, the Plaintiff, FEDERAL DEPOSIT INSURANCE
2  CORPORATION, as Receiver for Downey Savings & Loan Association, F.A.
3  ("FDIC" or "Plaintiff") and alleges as follows:

## I. JURISDICTION & VENUE

5  1.  This district court has jurisdiction over this action pursuant to 12 USC §
6  1819(b)(2)(A) and 28 USC § 1345 because the district courts have original
7  jurisdiction over civil actions in which the FDIC is a party, which actions are deemed
8  to arise under the laws of the United States.

9  2.  This district court is the proper venue for this action pursuant to 28 USC
10  § 1391(b)(2) because this is a civil action not founded solely on diversity of
11  citizenship and this judicial district in which a substantial part of the events or
12  omissions occurred that give rise to the claims hereafter alleged.

## II. THE PARTIES

### A.  The FDIC as Receiver for Downey Savings

15  3.  The FDIC is a federal entity that is organized under the laws of the
16  United States of America and has the power to sue and be sued in any court of law or
17  equity, State or Federal, pursuant to 12 USC § 1819(a).  On November 21, 2008 the
18  FDIC was appointed receiver for Downey Savings and Loan Association, F.A.
19  ("Downey") and thereupon succeeded to each of the claims hereafter alleged.

20  4.  The Financial Institutions Reform, Recovery, and Enforcement Act of
21  1989 ("FIRREA"), 12 USC § 1821(d)(14), sets forth the applicable statute of
22  limitations for the claims for relief brought by the FDIC as Receiver in this action.

23  5.  At all times herein alleged, Downey maintained its principal business
24  offices in Orange County, California.

### B.  The Brokers and Loan Officers

26  6.  Plaintiff is informed and believes and thereon alleges that at all relevant
27  times alleged herein Defendant AMERIFUND FINANCIAL, INC., a California
28  corporation ("Amerifund") is a California corporation in good standing and licensed

-1-

1  by the California Department of Real Estate ("DRE") as a Mortgage Broker. At all
2  relevant times alleged herein Amerifund held itself out to lenders and members of the
3  general public as having expertise in mortgage brokering. Plaintiff is informed and
4  believes and thereon alleges that at all relevant times alleged herein, Amerifund's
5  principal business office was located in the City of Spring Valley, in the County of
6  San Diego, State of California.

7       7.     Plaintiff is informed and believes and thereon alleges that at all relevant
8  times alleged herein, Defendant ERIC MATTHEW ANDERSON, an individual
9  ("Anderson") was licensed by the California DRE as real estate broker  and by his
10 broker's license Amerifund was qualified to do and was doing business in the State of
11 California. At all times alleged herein Anderson held Broker License No. 01258703
12 and Amerifund held Broker License No. 01370692. At all relevant times alleged
13 herein Anderson was the officer, agent and principal shareholder of Amerifund.

14      8.     Plaintiff is informed and believes and thereon alleges that Defendants
15 MICHAEL DALE MAURICIO, an individual ("Mauricio"); ANDRE WISHON
16 HOWELL, an individual ("Howell"); MOISES PACHECO, an individual
17 ("Pacheco"); and SAMUEL ASHBY SMITH, an individual ("Smith") were each
18 qualified and licensed by the California DRE as Salespersons and, at all times herein
19 alleged, said Salespersons were working under Amerifund's Broker license in
20 performing the acts and omissions hereafter described. Specifically, Mauricio held
21 Salesperson License No. 01378415; Howell held Salesperson License No. 01452753;
22 Pacheco held Salesperson License No. 01335541; and Smith held Salesperson License
23 No. 01364156.

24      9.     On or about March 31, 2000, January 8, 2003, May 15, 2006, and
25 September 25, 2007, Amerifund entered into written "Loan Brokerage Agreements"
26 ("Brokerage Agreements") with Downey under the terms of which Amerifund was
27 permitted to represent and submit to Downey residential mortgage loan applications
28 and supporting documentation, including appraisals, for Downey's review, approval

1  and funding.

2      10.    Under the terms of each of the Brokerage Agreements Amerifund
3  represented and warranted to Downey that all of the financial statements in the loan
4  applications that it submitted to Downey were "true, correct, currently valid and
5  genuine, and that [Amerifund] has undertaken a reasonable investigation in making
6  such determination."

7      11.    Additionally under the terms of the 2003, 2006 and 2007 Brokerage
8  Agreements Amerifund agreed to indemnify Downey and hold it harmless from and
9  against any loss, cost, claim, assertion, action or damage (including reasonable and
10 necessary attorney fees and related costs) arising out of or related to Amerifund's acts
11 or omissions under the Brokerage Agreements.

12     12.    Also under the Brokerage Agreements, Amerifund agreed to submit to
13 Downey with each loan application package, an appraisal report prepared by an
14 appraiser who Downey either engaged directly or was engaged by Amerifund as
15 Downey's agent.  Moreover, Amerifund agreed that it would not provide an appraiser
16 with any information that may unduly influence the appraiser or in any way suggest
17 the value of the collateral.

18              *C.  Anderson as Amerifund's Alter Ego*

19     13.    Plaintiff is informed and believes, and thereon alleges, that there exists,
20 and at all times herein mentioned there existed, a unity of interest and ownership
21 between Anderson, on the one hand, and Amerifund, on the other hand, such that any
22 individuality and separateness between Anderson and Amerifund ceased, and
23 Anderson is the alter ego of Amerifund, and vice-versa.

24     14.    Plaintiff is informed and believes and thereon alleges that at all relevant
25 times alleged herein Anderson were the sole shareholder of Amerifund and Anderson
26 owned, operated, influenced, governed, and controlled all of the business activities of
27 Amerifund.  Plaintiff is informed and believes and thereon alleges that at all relevant
28 times alleged herein Anderson exercised complete dominance and control over

-3-

1 Amerifund by: (a) having complete charge of the daily operations of Amerifund, from
2 managing and training employees to reviewing client files to deciding how to expense
3 Amerifund's income, including the salary Anderson paid himself; (b) possessing all
4 the voting power for all shares of stock; (c) approving and making loans to himself
5 from funds in Amerifund's bank account; (d) leasing and/or purchasing vehicles for
6 Anderson's personal use for which Amerifund paid; (e) acting as the broker or officer
7 of record of Amerifund and executing contracts as the qualifying and responsible
8 broker of Amerifund; and (f) making all final decisions with respect to the contracts
9 entered into by Amerifund, litigation against Amerifund and any loans made by
10 Amerifund to other entities or individuals. In so making these decisions on behalf of
11 Amerifund, Plaintiff is informed and believes that Anderson depleted Amerifund's
12 income and working capital leaving it unable to meet its reasonable business debts and
13 obligations. Instead, Anderson did not adequately capitalize Amerifund and,
14 thereafter, Anderson depleted Amerifund's revenues by paying himself a salary and/or
15 management fee that was inappropriate for the business income Amerifund was
16 generating at the time.

17      15.     Plaintiff is informed and believes and thereon alleges that at all relevant
18 times alleged herein Anderson also used the assets of Amerifund for his personal use
19 and commingled his personal assets with Amerifund's assets by: (a) taking corporate
20 funds for loans to Anderson for his personal use; (b) using corporate assets to pay off
21 the personal debts of Anderson; (c) leasing and/or purchasing vehicles for Anderson's
22 personal use; and (d) using funds from Amerifund's business account to pay
23 Anderson's household expenses.

24      16.     Plaintiff is informed and believes and thereon alleges that at all relevant
25 times alleged herein, Amerifund failed to observe corporate formalities, including but
26 not limited to, failing to maintain corporate minutes and resolutions, and failing to
27 hold and document shareholder and board of director meetings.

28      17.     Plaintiff is informed and believes and thereon alleges that at all relevant

-4-

1   times alleged herein Amerifund was so inadequately capitalized that compared with
2   the business done by Amerifund and the risk of loss associated with that business, its
3   capitalization was illusory. Plaintiff is informed and believes and thereon alleges that
4   at all relevant times alleged herein Amerifund's expenses either equaled or exceeded
5   its cash flow, and thus, Amerifund was organized and carried on business without
6   substantial capital in such a way that Amerifund was likely to have insufficient assets
7   available to meet its debts.

8       18.    Plaintiff is informed and believes and thereon alleges that at all relevant
9   times alleged herein, Amerifund was conceived, intended and used by Anderson to try
10  and avoid incurring individual liability for the fraud and deceit that is hereafter
11  alleged. Plaintiff is informed and believes, as hereafter alleged, that Anderson and
12  Amerifund, with the aid and support of their co-defendant sub-agents, officers and
13  employees, caused to be submitted to Downey six (6) loan applications between June
14  2004 and December 2005; and, that in submitting the loan applications to Downey
15  said defendants either knowingly or recklessly altered and/or inflated the borrowers'
16  stated incomes and assets; and/or understated the borrowers' debts; and/or
17  misrepresented the borrowers' occupancy of the collateral property as their primary
18  residence. Plaintiff is further informed and believes and thereon alleges that Anderson
19  and Amerifund, with the aid and support of their co-defendant sub-agents, officers and
20  employees, caused the borrowers' financial statements to be altered or mis-stated in
21  the loan applications that they submitted or caused to be submitted to Downey so that
22  Downey would believe the financial statements were true and accurate; knowing at the
23  time, that if the borrowers' true income, debts and/or residency were disclosed that the
24  borrowers would not qualify for Downey's loans.

25      19.    Adherence to the fiction of the separate existence of Amerifund as an
26  entity distinct from Anderson would permit an abuse of the corporate privilege and
27  would sanction Anderson's fraud and promote injustice. Anderson's fraudulent
28  conduct in abusing Amerifund as a corporate entity makes it inequitable for Anderson

-5-

1  to hide behind the corporate form in an attempt to shield himself from liability on
2  Plaintiff's claims alleged herein.

3  ### D. *Mauricio, Howell, Pacheco and Smith as Loan Officers*

4  20.  Plaintiff is informed and believes and thereon alleges that at all relevant
5  times alleged herein Mauricio, Howell, Pacheco and Smith were each employed or
6  retained as sub-agent Loan Officers of Amerifund. As sub-agent Loan Officers of
7  Amerifund, Mauricio, Howell, Pacheco and Smith were responsible for interfacing
8  with the borrowers and collecting from the borrowers accurate information relating to
9  their finances (e.g., income, assets and debts) so that the information placed in each
10  borrower's loan application would be true, accurate and correct as of the date of the
11  loan application. In performing said responsibilities, Mauricio, Howell, Pacheco and
12  Smith were performing the contractual and statutory duties of their Brokers,
13  Amerifund and Anderson which were obligated to Downey to make complete and
14  accurate disclosures of the borrowers' financial statements in the written loan
15  applications. Further, in performing their duties, Mauricio, Howell, Pacheco and
16  Smith each had actual knowledge of the contractual, statutory and common law duties
17  owed by Amerifund and Anderson which obligated them to make complete and
18  accurate disclosures of the borrowers' financial statements in the written loan
19  applications they submitted to Downey.

20  21.  Plaintiff is informed and believes and thereon alleges that at all relevant
21  times alleged herein, it was the responsibility of Amerifund and its alter ego,
22  Anderson, to train and supervise the activities of the sub-agent Loan Officers,
23  Mauricio, Howell, Pacheco and Smith, and thereby make certain that they were
24  performing the Broker's contractual, statutory and common law duties that were owed
25  to Downey, including without limitation, performing a reasonable investigation to
26  confirm that the financial statements in each borrower's loan application were true,
27  correct and accurate as of the date each loan application was submitted to Downey.
28  ///

-6-
COMPLAINT FOR DAMAGES

## III. GENERAL ALLEGATIONS

### A. Donovan Loan

22.     Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein, Defendant ANN K. DONOVAN ("Donovan") applied for a refinance loan from Downey for $185,000 ("Donovan Loan") that was secured by a first deed of trust on real property commonly known as 4635 Texas Street, Unit 3, San Diego, California ("Donovan Property").

23.     Plaintiff is informed and believes and thereon alleges that on or about August 26, 2004 Amerifund, Anderson, Mauricio and Donovan compiled, prepared and submitted to Downey a written loan application wherein said Defendants jointly represented and stated that Donovan earned a certain monthly income, had certain assets and debts, and that Donovan occupied the Donovan Property as her primary residence ("Donovan Loan Application").

24.     Amerifund, Anderson, Mauricio and Donovan thereafter jointly or effectively signed, through their agents and employees, the Donovan Loan Application and thereafter submitted it to Downey.  In so doing, Amerifund, Anderson, Mauricio and Donovan jointly certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine.  Further, under the Brokerage Agreements, Amerifund and Anderson as its alter ego jointly certified and represented to Downey in writing that they had undertaken a reasonable investigation by which they had determined that the financial statements contained in the Donovan Loan Application were true, correct, currently valid and genuine. Downey reasonably relied on the financial statements contained in the Donovan Loan Application in making its determination to approve and fund the Donovan Loan.

25.     Based upon the income, debt and residency information submitted to Downey by Amerifund, Anderson, Mauricio and Donovan, Downey reasonably believed that Donovan had the ability to repay the Donovan Loan according to its

-7-

1  terms and conditions.

2      26.    On or about August 31, 2004, pursuant to the written loan application
3  submitted to it by Amerifund, Anderson, Mauricio and Donovan, Downey funded the
4  Donovan Loan and secured it with a first lien trust deed against the Donovan Property.

5      27.    On or about March 1, 2007, Donovan defaulted on the payments that
6  were then due on the Donovan Loan.

7      28.    Plaintiff is informed and believes and thereon alleges that after the
8  Donovan Loan defaulted Downey first discovered that the Donovan Loan Application
9  had grossly overstated Donovan's income and misrepresented the Donovan Property
10 as being Donovan's primary residence when, in actuality, it was being used as a
11 rental.

12     29.    After the Donovan Loan defaulted, Donovan provided to Downey's Loss
13 Mitigation Department her income tax return for 2005. The tax return confirmed that
14 the Donovan Loan Application had overstated Donovan's income and her place of
15 residence.

16     30.    Plaintiff is informed and believes and thereon alleges that *either* (a)
17 Donovan provided Amerifund, Anderson and Mauricio her accurate financial
18 information for the Donovan Loan Application and yet Amerifund, Anderson and
19 Mauricio instead chose to grossly overstate Donovan's income and residency without
20 her knowledge or consent; *or* (b) Amerifund, Anderson, Mauricio and Donovan
21 deliberately overstated Donovan's income and residency in order to qualify her for the
22 refinance loan from Downey that Donovan would not otherwise have qualified for if
23 true and accurate information had been disclosed.

24     31.    Downey reasonably relied upon the information in the Donovan Loan
25 Application. Downey had no reason to verify the information in the Donovan Loan
26 Application until after default had occurred because Amerifund and Anderson as its
27 alter ego and Mauricio as the Broker's sub-agent had expressly agreed in the
28 Brokerage Agreements that a reasonable investigation had been conducted by which

-8-

1 they determined that the financial statements contained in the Donovan Loan
2 Application were true, correct, currently valid and genuine. Further, Amerifund,
3 Anderson and Mauricio knew Downey would rely upon the Donovan Loan
4 Application as being true, correct, currently valid and genuine in its determination of
5 whether to approve and fund the Donovan Loan and, that Downey would rely upon
6 the accuracy of the Donovan Loan Application in making its decision to approve and
7 fund the refinance loan. Additionally, Downey did not suffer any damages with
8 respect to the Donovan Loan until after the Donovan Loan had defaulted.

9      32.   Plaintiff is informed and believes, and thereon alleges, that on or about
10 October 3, 2007 Downey foreclosed by trustee's sale on the trust deed that secured the
11 Donovan Loan. At said foreclosure sale, Downey made a credit bid of a portion of the
12 balance that was then due and owed on the Donovan Loan and thereupon the Donovan
13 Property reverted to Downey, resulting in a loss to Downey of $113,760 or, according
14 to proof at trial.

15                                   **B. Gallegos Loan**

16      33.   Plaintiff is informed and believes and thereon alleges that at all relevant
17 times alleged herein, Defendants CHRIS GALLEGOS, an individual, and PAM
18 GALLEGOS, an individual (jointly, "Gallegos") applied for and received a refinance
19 loan from Downey on or about January 27, 2005 for $392,000 ("Gallegos Loan") that
20 was secured by a first trust deed on real property commonly known as 1583 Jade
21 Avenue, El Cajon, California ("Gallegos Property").

22      34.   Plaintiff is informed and believes and thereon alleges that on or about
23 January 27, 2005 Amerifund, Anderson as the Loan Officer, and Gallegos compiled,
24 prepared and submitted to Downey a written loan application wherein said Defendants
25 jointly represented and stated that Gallegos earned a certain monthly income, had
26 certain assets and debts, and that Gallegos occupied the Gallegos Property as their
27 primary residence ("Gallegos Loan Application").

28      35.   Amerifund, Anderson and Gallegos thereafter jointly or effectively

-9-

1 signed, through their agents and employees, the Gallegos Loan Application and
2 thereafter submitted it to Downey. In so doing, Amerifund, Anderson and Gallegos
3 jointly certified and represented to Downey in writing that the information contained
4 therein was true, correct, currently valid and genuine. Further, under the Brokerage
5 Agreements, Amerifund and Anderson as its alter ego jointly certified and represented
6 to Downey in writing that they had undertaken a reasonable investigation by which
7 they had determined that the financial statements contained in the Gallegos Loan
8 Application were true, correct, currently valid and genuine. Downey reasonably relied
9 on the financial statements contained in the Gallegos Loan Application in making its
10 determination to approve and fund the Gallegos Loan.

11     36.    Based upon the income, debt and residency information submitted to
12 Downey by Amerifund, Anderson and Gallegos, Downey reasonably believed that
13 Gallegos had the ability to repay the Gallegos Loan according to its terms and
14 conditions.

15     37.    On or about February 9, 2005, pursuant to the written loan application
16 submitted to it by Amerifund, Anderson and Gallegos, Downey funded the Gallegos
17 Loan and secured it with a first lien trust deed against the Gallegos Property.

18     38.    In or about June 26, 2008, Gallegos defaulted on the payments that were
19 then due on the Gallegos Loan.

20     39.    Plaintiff is informed and believes and thereon alleges that after the
21 Gallegos Loan defaulted Downey first discovered that the Gallegos Loan Application
22 had understated Gallegos' debts and the fact that they did not occupy the Gallegos
23 Property as their primary residence. In actuality, the Gallegos refinanced the Gallegos
24 Property, received over $143,000 in cash out from the Downey refinance loan, and
25 then used those funds (wholly or partially) to purchase on the very same day as the
26 Downey loan funded, a new property located at 2205 Valley View Blvd., El Cajon,
27 California. Thereafter, Gallegos used the Gallegos Property as a rental.

28     40.    After the Gallegos Loan defaulted, the borrowers provided to Downey's

1 Loss Mitigation Department their joint income tax return for 2005 that reflected the
2 Gallegos Property was a rental and they were living in the home on Valley View
3 Boulevard. The tax return confirmed that the Gallegos Loan Application had
4 understated Gallegos's debts and their place of residence.

5     41.    Plaintiff is informed and believes and thereon alleges that *either* (a)
6 Gallegos provided Amerifund and Anderson with their accurate financial information
7 and intention to buy a new home and to use the Gallegos Property as a rental unit
8 when completing the Gallegos Loan Application and yet Amerifund and Anderson
9 instead chose to misrepresent Gallegos's debts and residency without their knowledge
10 or consent; *or* (b) Amerifund, Anderson and Gallegos deliberately understated
11 Gallegos's debts and residency in order to qualify them for the refinance loan from
12 Downey that Gallegos would not otherwise have qualified for if true and accurate
13 information had been disclosed.

14     42.    Downey reasonably relied upon the information in the Gallegos Loan
15 Application. Downey had no reason to verify the information in the Gallegos Loan
16 Application until after default had occurred because Amerifund and Anderson as its
17 alter ego and Anderson as the Broker's sub-agent had expressly agreed in the
18 Brokerage Agreements that a reasonable investigation had been conducted by which
19 they determined that the financial statements contained in the Gallegos Loan
20 Application were true, correct, currently valid and genuine. Further, Amerifund and
21 Anderson knew Downey would rely upon the Gallegos Loan Application as being
22 true, correct, currently valid and genuine in its determination of whether to approve
23 and fund the Gallegos Loan and, that Downey would rely upon the accuracy of the
24 Gallegos Loan Application in making its decision to approve and fund the refinance
25 loan. Additionally, Downey did not suffer any damages with respect to the Gallegos
26 Loan until after the Gallegos Loan had defaulted.

27     43.    Plaintiff is informed and believes, and thereon alleges, that on or about
28 June 26, 2008 Downey consented to a short sale and released the trust deed that

-11-

1 secured the Gallegos Loan in exchange for which Downey received less than the full
2 amount that was then due and owing on the Gallegos Loan, resulting in a loss to
3 Downey of $174,747 or, according to proof at trial.

### C. Manuel Loan

44. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein, ALAN EARL MANUEL, an individual, and ROWENA P. MANUEL, an individual (jointly, "Manuel") applied for a refinance loan from Downey for $760,000 ("Manuel Loan") that was secured by a first trust deed on real property commonly known as 10707 El Caballo Ave., San Diego, California ("Manuel Property").

45. Plaintiff is informed and believes and thereon alleges that on or about June 5, 2004 Amerifund, Anderson, Mauricio and Manuel compiled, prepared and submitted to Downey a written loan application wherein said Defendants jointly represented and stated that Manuel earned a certain monthly income, had certain assets and debts ("Manuel Loan Application").

46. Amerifund, Anderson, Mauricio and Manuel thereafter jointly or effectively signed, through their agents and employees, the Manuel Loan Application and thereafter submitted it to Downey. In so doing, Amerifund, Anderson, Mauricio and Manuel jointly certified and represented to Downey in writing that the information contained therein was true, correct, currently valid and genuine. Further, under the Brokerage Agreements, Amerifund and Anderson as its alter ego jointly certified and represented to Downey in writing that they had undertaken a reasonable investigation by which they had determined that the financial statements contained in the Manuel Loan Application were true, correct, currently valid and genuine. Downey reasonably relied on the financial statements contained in the Manuel Loan Application in making its determination to approve and fund the Manuel Loan.

47. Based upon the income, assets and debt information submitted to Downey by Amerifund, Anderson, Mauricio and Manuel, Downey reasonably

-12-

1 believed that Manuel had the ability to repay the Manuel Loan according to its terms
2 and conditions.

3    48.    On or about June 10, 2004, pursuant to the written loan application
4 submitted to it by Amerifund, Anderson, Mauricio and Manuel, Downey funded the
5 Manuel Loan and secured it with a first lien trust deed against the Manuel Property.

6    49.    On or about July 22, 2004, shortly after the Manuel Loan by Downey had
7 funded, Manuel applied for and received a secret second loan secured by the Manuel
8 Property from another lender in the amount of $95,000. The second trust deed
9 securing that loan was recorded on or about August 5, 2004. Plaintiff is informed and
10 believes and thereon alleges that Amerifund, Anderson and Mauricio assisted and
11 represented Manuel in obtaining the secret, second loan on the Manuel Property at the
12 same time as said defendants were submitting the Manuel Loan Application to
13 Downey.

14    50.    On or about May 1, 2007, Manuel defaulted on the payments that were
15 then due on the Manuel Loan.

16    51.    Plaintiff is informed and believes and thereon alleges that after the
17 Manuel Loan defaulted Downey first discovered that the Manuel Loan Application
18 had grossly overstated the Manuel's income and misrepresented the Manuel's debts
19 because, at the same time as Manuel was applying for the Downey loan, they were
20 secretly apply for a second loan. That secret second loan should have been disclosed
21 by the defendants to Downey and its non-disclosure was material because the added
22 mortgage debt would have made Manuel unqualified for the Manuel Loan from
23 Downey.

24    52.    After the Manuel Loan defaulted, the borrowers provided to Downey's
25 Loss Mitigation Department their joint income tax return for 2004. The tax return
26 confirmed that the Manuel Loan Application had overstated Manuel's income. If the
27 Manuel's actual income had been disclosed to Downey at the time, Downey would not
28 have approved the Manuel Loan Application.

-13-

1       53.    Plaintiff is informed and believes and thereon alleges that *either* (a)
2 Manuel provided Amerifund, Anderson and Mauricio with their accurate financial
3 information for the Manuel Loan Application and yet Amerifund, Anderson and
4 Mauricio instead chose to grossly overstate the Manuel's income and secret second
5 loan they were applying for simultaneously without their knowledge or consent; *or* (b)
6 Amerifund, Anderson, Mauricio and Manuel deliberately overstated Manuel's income
7 and debts in order to qualify them for the refinance loan from Downey that Manuel
8 would not otherwise have qualified for if true and accurate information had been
9 disclosed.

10       54.    Downey reasonably relied upon the information in the Manuel Loan
11 Application. Downey had no reason to verify the information in the Manuel Loan
12 Application until after default had occurred because Amerifund and Anderson as its
13 alter ego and Mauricio as the Broker's sub-agent had expressly agreed in the
14 Brokerage Agreements that a reasonable investigation had been conducted by which
15 they determined that the financial statements contained in the Manuel Loan
16 Application were true, correct, currently valid and genuine. Further, Amerifund,
17 Anderson and Mauricio knew Downey would rely upon the Manuel Loan Application
18 as being true, correct, currently valid and genuine in its determination of whether to
19 approve and fund the Manuel Loan and, that Downey would rely upon the accuracy of
20 the Manuel Loan Application in making its decision to approve and fund the refinance
21 loan. Additionally, Downey did not suffer any damages with respect to the Manuel
22 Loan until after the Manuel Loan had defaulted. After the Manuel Loan defaulted,
23 Manuel filed a voluntary Chapter 7 Bankruptcy (Case No. 08-01166-LT7) in the
24 Southern District of California Bankruptcy Court, and received their discharge therein.
25 Accordingly, Manuel is not named as a defendant in this action.

26       55.    Plaintiff is informed and believes, and thereon alleges, that on or about
27 June 27, 2008 Downey foreclosed by trustee's sale on the trust deed that secured the
28 Manuel Loan. At said foreclosure sale, Downey made a credit bid of a portion of the

-14-

1  balance that was then due and owed on the Manuel Loan and thereupon the Manuel
2  Property reverted to Downey, resulting in a loss to Downey of $345,305 or, according
3  to proof at trial.

### D. Norman Loan

5  56.    Plaintiff is informed and believes and thereon alleges that at all relevant
6  times alleged herein, Defendant ANTHONY NORMAN, an individual ("Norman")
7  applied for a refinance loan from Downey for $255,000 ("Norman Loan") that was
8  secured by a first trust deed on real property commonly known as 4349 W. Vasser
9  Avenue, Fresno, California ("Norman Property").

10  57.    Plaintiff is informed and believes and thereon alleges that on or about
11  September 21, 2005 Amerifund, Anderson, Howell as the Loan Officer, and Norman
12  compiled, prepared and submitted to Downey a written loan application wherein said
13  Defendants jointly represented and stated that Norman earned a certain monthly
14  income, had certain assets and debts, and that Norman occupied the Norman Property
15  as his primary residence ("Norman Loan Application").

16  58.    Amerifund, Anderson, Howell and Norman thereafter jointly or
17  effectively signed, through their agents and employees, the Norman Loan Application
18  and thereafter submitted it to Downey. In so doing, Amerifund, Anderson, Howell
19  and Norman jointly certified and represented to Downey in writing that the
20  information contained therein was true, correct, currently valid and genuine. Further,
21  under the Brokerage Agreements, Amerifund and Anderson as its alter ego jointly
22  certified and represented to Downey in writing that they had undertaken a reasonable
23  investigation by which they had determined that the financial statements contained in
24  the Norman Loan Application were true, correct, currently valid and genuine. Downey
25  reasonably relied on the financial statements contained in the Norman Loan
26  Application in making its determination to approve and fund the Norman Loan.

27  59.    Based upon the income, debt and residency information submitted to
28  Downey by Amerifund, Anderson, Howell and Norman, Downey reasonably believed

-15-

1  that Norman had the ability to repay the Norman Loan according to its terms and
2  conditions.

3        60.    On or about September 22, 2005, pursuant to the written loan application
4  submitted to it by Amerifund, Anderson, Howell and Norman, Downey funded the
5  Norman Loan and secured it with a first lien trust deed against the Norman Property.

6        61.    On or about February 1, 2007, Norman defaulted on the payments that
7  were then due on the Norman Loan.

8        62.    Plaintiff is informed and believes and thereon alleges that after the
9  Norman Loan defaulted Downey first discovered that the Norman Loan Application
10 had significantly overstated Norman's salary, understated his debts, failed to disclose
11 self-employment, and misrepresented Norman's occupancy of the Norman Property in
12 that he was using it as an adult care facility/rental and Norman was not occupying the
13 Norman Property as his primary residence.

14       63.    After the Norman Loan defaulted, Norman provided to Downey's Loss
15 Mitigation Department his income tax return for 2005 that reflected the Norman
16 Property was an adult care facility/rental and Norman was living in another home in
17 Fresno, California. The tax return confirmed that the Norman Loan Application had
18 not disclosed his self-employment (which resulted in a monthly loss), had understated
19 Norman's debts and mis-stated his place of residence.

20       64.    Plaintiff is informed and believes and thereon alleges that *either* (a)
21 Norman provided Amerifund, Anderson and Howell with his accurate financial
22 information and intention to use the Norman Property as an adult care facility/rental
23 for completing the Norman Loan Application and yet Amerifund, Anderson and
24 Howell instead chose to misrepresent Norman's income, debts and residency without
25 his knowledge or consent; *or* (b) Amerifund, Anderson, Howell and Norman
26 deliberately misstated Norman's income, debts and residency in order to qualify him
27 for the refinance loan from Downey that Norman would not otherwise have qualified
28 for if true and accurate information had been disclosed.

-16-

65. Downey reasonably relied upon the information in the Norman Loan Application. Downey had no reason to verify the information in the Norman Loan Application until after default had occurred because Amerifund and Anderson as its alter ego, and Howell as the Broker's sub-agent had expressly agreed in the Brokerage Agreements and were obligated to conduct a reasonable investigation by which they determined that the financial statements contained in the Norman Loan Application were true, correct, currently valid and genuine. Further, Amerifund, Anderson and Howell knew Downey would rely upon the Norman Loan Application as being true, correct, currently valid and genuine in its determination of whether to approve and fund the Norman Loan and, that Downey would rely upon the accuracy of the Norman Loan Application in making its decision to approve and fund the refinance loan. Additionally, Downey did not suffer any damages with respect to the Norman Loan until after the Norman Loan had defaulted.

66. Plaintiff is informed and believes, and thereon alleges, that on or about February 19, 2008 Downey foreclosed by trustee's sale on the trust deed that secured the Norman Loan. At said foreclosure sale, Downey made a full credit bid of the balance that was then due and owed on the Norman Loan and thereupon the Norman Property reverted to Downey. For months thereafter Downey had to hold, insure and maintain the Norman Property, prepare it for sale, and then sell it to a third party, to Downey's resulting loss of $89,900 or, according to proof at trial.

### E. White Loan

67. Plaintiff is informed and believes and thereon alleges that at all relevant times alleged herein, Defendant PETRA WHITE, an individual ("White") applied for and received a purchase money loan from Downey on or about February 17, 2005 for $384,000 ("White Loan") that was secured by a first trust deed on real property commonly known as 1343-1345 E. 6th Street, National City, California ("White Property").

68. Plaintiff is informed and believes and thereon alleges that on or about

-17-

1 | February 11, 2005 Amerifund, Anderson, Pacheco as the Loan Officer, and White
2 | compiled, prepared and submitted to Downey a written loan application wherein said
3 | Defendants jointly represented and stated that White earned a certain monthly income,
4 | had certain assets and debts, and that White occupied the White Property as her
5 | primary residence ("White Loan Application").

6 |     69.    Amerifund, Anderson, Pacheco and White thereafter jointly or effectively
7 | signed, through their agents and employees, the White Loan Application and
8 | thereafter submitted it to Downey. In so doing, Amerifund, Anderson, Pacheco and
9 | White jointly certified and represented to Downey in writing that the information
10 | contained therein was true, correct, currently valid and genuine. Further, under the
11 | Brokerage Agreements, Amerifund and Anderson and their sub-agents, including
12 | Pacheco, jointly certified and represented to Downey in writing that they had
13 | undertaken a reasonable investigation by which they had determined that the financial
14 | statements contained in the White Loan Application were true, correct, currently valid
15 | and genuine. Downey reasonably relied on the financial statements contained in the
16 | White Loan Application in making its determination to approve and fund the White
17 | Loan.

18 |     70.    Based upon the income, debt and residency information submitted to
19 | Downey by Amerifund, Anderson, Pacheco and White, Downey reasonably believed
20 | that White had the ability to repay the White Loan according to its terms and
21 | conditions.

22 |     71.    On or about February 17, 2005, pursuant to the written loan application
23 | submitted to it by Amerifund, Anderson, Pacheco and White, Downey funded the
24 | White Loan and secured it with a first lien trust deed against the White Property.

25 |     72.    On or about January 1, 2008, White defaulted on the payments that were
26 | then due on the White Loan.

27 |     73.    Plaintiff is informed and believes and thereon alleges that after the White
28 | Loan defaulted Downey first discovered that the White Loan Application had

-18-

1  misrepresented White's occupancy of the White Property in that just sixteen (16) days
2  after Downey funded the White Loan, White transferred title to the White Property to
3  "AP Capital, a California limited partnership" that was owned or controlled by
4  Pacheco. Thus, White was not occupying the White Property as her primary
5  residence, contrary to the representation made in the White Loan Application that was
6  certified to be true and correct. In actuality, White was serving as a "straw buyer" for
7  which Pacheco and his affiliated companies were later prosecuted by the Securities
8  and Exchange Commission in Case No. 09-CV-1355 W RBB, in the United States
9  District Court, Southern District of California.

10  74. After the White Loan defaulted, Downey obtained confirmation that
11  White was receiving Social Security and another small stipend as her apparent only
12  source of income; thus, Plaintiff is informed and believes and thereon alleges that the
13  White Loan Application overstated her income and mis-stated her intention to occupy
14  the White Property as her primary residence.

15  75. Plaintiff is informed and believes and thereon alleges that *either* (a)
16  White provided Amerifund, Anderson and Pacheco with her accurate financial
17  information and intention not to occupy the White Property for completing the White
18  Loan Application and yet Amerifund, Anderson and Pacheco instead chose to
19  misrepresent White's income and residency without her knowledge or consent; *or* (b)
20  Amerifund, Anderson, Pacheco and White deliberately overstated White's income and
21  misrepresented her residency in order to qualify her for the purchase money loan from
22  Downey that White would not otherwise have qualified for if true and accurate
23  information had been disclosed.

24  76. Downey reasonably relied upon the information in the White Loan
25  Application. Downey had no reason to verify the information in the White Loan
26  Application until after default had occurred because Amerifund and Anderson as its
27  alter ego, and Pacheco as the Broker's sub-agent had expressly agreed in the
28  Brokerage Agreements and were obligated to conduct a reasonable investigation by

-19-

1  which they determined that the financial statements contained in the White Loan
2  Application were true, correct, currently valid and genuine. Further, Amerifund,
3  Anderson and Pacheco knew Downey would rely upon the White Loan Application as
4  being true, correct, currently valid and genuine in its determination of whether to
5  approve and fund the White Loan and, that Downey would rely upon the accuracy of
6  the White Loan Application in making its decision to approve and fund the refinance
7  loan. Additionally, Downey did not suffer any damages with respect to the White
8  Loan until after the White Loan had defaulted.

9       77.    Plaintiff is informed and believes, and thereon alleges, that on or about
10  July 10, 2008 Downey foreclosed by trustee's sale on the trust deed that secured the
11  White Loan. At said foreclosure sale, Downey made a credit bid of a portion of the
12  balance that was then due and owed on the White Loan and thereupon the White
13  Property reverted to Downey, resulting in a loss to Downey of $199,413 or, according
14  to proof at trial.

15                              *F. Worthy Loan*

16      78.    Plaintiff is informed and believes and thereon alleges that at all relevant
17  times alleged herein, TERRI LYNN WORTHY, an individual ("Worthy") applied for
18  ed a refinance loan from Downey for $423,500 ("Worthy Loan") that was secured by
19  a first trust deed on real property commonly known as 8425 Innsdale Lane, San
20  Diego, California ("Worthy Property").

21      79.    Plaintiff is informed and believes and thereon alleges that on or about
22  December 23, 2005 Amerifund, Anderson, Smith and Worthy compiled, prepared and
23  submitted to Downey a written loan application wherein said Defendants jointly
24  represented and stated that Worthy earned a certain monthly income, had certain
25  assets and debts, and that Worthy occupied the Worthy Property as her primary
26  residence ("Worthy Loan Application").

27      80.    Amerifund, Anderson, Mauricio and Worthy thereafter jointly or
28  effectively signed, through their agents and employees, the Worthy Loan Application

-20-

1  and thereafter submitted it to Downey.  In so doing, Amerifund, Anderson, Mauricio
2  and Worthy jointly certified and represented to Downey in writing that the
3  information contained therein was true, correct, currently valid and genuine.  Further,
4  under the Brokerage Agreements, Amerifund and Anderson as its alter ego, and Smith
5  as said Broker's sub-agent, jointly certified and represented to Downey in writing that
6  they had undertaken a reasonable investigation by which they had determined that the
7  financial statements contained in the Worthy Loan Application were true, correct,
8  currently valid and genuine. Downey reasonably relied on the financial statements
9  contained in the Worthy Loan Application in making its determination to approve and
10  fund the Worthy Loan.

11        81.    Based upon the income, debt and residency information submitted to
12  Downey by Amerifund, Anderson, Smith and Worthy, Downey reasonably believed
13  that Worthy had the ability to repay the Worthy Loan according to its terms and
14  conditions.

15        82.    On or about December 30, 2005, pursuant to the written loan application
16  submitted to it by Amerifund, Anderson, Smith and Worthy, Downey funded the
17  Worthy Loan and secured it with a first lien trust deed against the Worthy Property.

18        83.    On or about August 1, 2007, Worthy defaulted on the payments that were
19  then due on the Worthy Loan.

20        84.    Plaintiff is informed and believes and thereon alleges that after the
21  Worthy Loan defaulted Downey first discovered that the Worthy Loan Application
22  had grossly overstated the Worthy's income.  If Worthy's actual income had been
23  disclosed to Downey she would not have qualified for the Worthy Loan from
24  Downey.

25        85.    After the Worthy Loan defaulted, she provided to Downey's Loss
26  Mitigation Department her income tax return for 2005.  The tax return confirmed that
27  the Worthy Loan Application had overstated Worthy's income.  If the Worthy's actual
28  income had been disclosed to Downey at the time, Downey would not have approved

-21-

1 the Worthy Loan Application.

2     85.    Plaintiff is informed and believes and thereon alleges that *either* (a)
3 Worthy provided Amerifund, Anderson and Smith with her accurate financial
4 information for the Worthy Loan Application and yet Amerifund, Anderson and
5 Smith instead chose to overstate Worthy's income without her knowledge or consent;
6 *or* (b) Amerifund, Anderson, Smith and Worthy deliberately overstated Worthy's
7 income and debts in order to qualify her for the refinance loan from Downey that
8 Worthy would not otherwise have qualified for if true and accurate information had
9 been disclosed.

10     86.    Downey reasonably relied upon the information in the Worthy Loan
11 Application.  Downey had no reason to verify the information in the Worthy Loan
12 Application until after default had occurred because Amerifund and Anderson as its
13 alter ego and Smith as the Broker's sub-agent had agreed in the Brokerage
14 Agreements that a reasonable investigation had been conducted by which they
15 determined that the financial statements contained in the Worthy Loan Application
16 were true, correct, currently valid and genuine.  Further, Amerifund, Anderson and
17 Smith knew Downey would rely upon the Worthy Loan Application as being true,
18 correct, currently valid and genuine in its determination of whether to approve and
19 fund the Worthy Loan and, that Downey would rely upon the accuracy of the Worthy
20 Loan Application in making its decision to approve and fund the refinance loan.
21 Additionally, Downey did not suffer any damages with respect to the Worthy Loan
22 until after the Worthy Loan had defaulted.  After the Worthy Loan defaulted, Worthy
23 filed a voluntary Chapter 7 Bankruptcy (Case No. 08-02200-LA7) in the Southern
24 District of California Bankruptcy Court, and received her discharge therein.
25 Accordingly, Worthy is not named as a defendant in this action.

26     87.    Plaintiff is informed and believes, and thereon alleges, that on or about
27 June 30, 2008 Downey foreclosed by trustee's sale on the trust deed that secured the
28 Worthy Loan.  At said foreclosure sale, Downey made a credit bid of a portion of the

-22-

1  balance that was then due and owed on the Worthy Loan and thereupon the Worthy
2  Property reverted to Downey, resulting in a loss to Downey of \$270,146 or, according
3  to proof at trial.

## IV.  COUNT ONE

## BREACH OF CONTRACT

### (Against Amerifund and Anderson)

7      88.    Plaintiff incorporates by this reference paragraphs 1 through 87 above as
8  though fully set forth hereat.

9      89.    Pursuant to the Brokerage Agreements, Amerifund and Anderson as its
10 qualifying broker and alter ego, agreed to submit to Downey at their sole cost and
11 expense, loan applications on which said defendants and their sub-agents had
12 undertaken a reasonable investigation and had determined the information contained
13 therein was true, correct, currently valid and genuine.

14     90.    Pursuant to the Brokerage Agreements, Amerifund and Anderson as its
15 qualifying broker and alter ego implicitly warranted and represented that all of their
16 broker activities would comply with applicable laws and regulations by which said
17 brokers were licensed and conducting business; and, in furtherance of those
18 representations, Amerifund and Anderson expressly agreed to indemnify Downey and
19 hold Downey harmless from any loss, cost, claim, action or damage, including
20 reasonable and necessary attorney fees and related costs that arose out of or were
21 related to acts or omissions of Amerifund, Anderson and their sub-agents under the
22 Brokerage Agreements.

23     91.    Plaintiff is informed and believes and thereon alleges that Anderson, by
24 virtue of his DRE broker licensed status, his status as the alter ego of Amerifund, and
25 because of his employment, independent contractor and/or agency relationship with
26 Amerifund, that Anderson was bound to perform and did assume performance of each
27 of the terms and conditions of the Brokerage Agreements.

28     92     Plaintiff is informed and believes and thereon alleges that at all relevant

-23-

1 | times alleged herein Downey fully performed all of its duties under the Brokerage
2 | Agreements.

3 |     93.     Plaintiff is informed and believes and thereon alleges that at all relevant
4 | times alleged herein Amerifund and Anderson each breached the duties owed and/or
5 | assumed by them under the Brokerage Agreements by, *inter alia*, (i) failing to conduct
6 | a reasonable investigation into the financial information set forth in the six (6) loan
7 | applications described above such that the information therein submitted to Downey
8 | was not true, correct, currently valid and genuine; and (ii) failing to disclose
9 | accurately and fully all material financial information relative to the six (6) loan
10 | applications described above such that the information submitted to Downey by said
11 | Defendants was not true, correct, currently valid and genuine.

12 |     94.     As a direct and proximate result of the breach of the Brokerage
13 | Agreements by Amerifund and Anderson, Plaintiff as Downey's Receiver has been
14 | damaged in the combined total amount of $1,193,271 or, according to proof at trial,
15 | together with prejudgment interest on Plaintiff's liquidated damages at the maximum
16 | rate allowed by law.

17 |     95.     As a further direct and proximate result of the Defendants' breach of the
18 | Brokerage Agreements, and pursuant to the provisions thereof, Plaintiff has and will
19 | continue to incur reasonable and necessary attorney's fees and related costs in
20 | connection with this action, as additional damages caused by the breach of the
21 | Brokerage Agreements by Amerifund and Anderson, in an amount not yet known, but
22 | which will be proven by Plaintiff at time of trial.

23 | **V. COUNT TWO**

24 | **PROFESSIONAL NEGLIGENCE**

25 | **(Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)**

26 |     96.     Plaintiff incorporates by reference paragraphs 1 through 87 above as
27 | though fully set forth hereat.

28 |     97.     Plaintiff is informed and believes and thereon alleges that at all relevant

-24-

1  times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
2  each owed a professional duty of care to use the same degree of reasonable care, skill
3  and diligence in preparing and submitting loan applications to Downey as other
4  similarly situated, licensed individuals in the mortgage brokering industry.

5       98.    At all relevant times alleged herein, Amerifund, Anderson, Mauricio,
6  Howell, Pacheco and Smith were each also bound by the standards of care set forth by
7  statutes and regulations and imposed upon them as licensees of the California DRE.

8       99.    Plaintiff is informed and believes and thereon alleges that at all relevant
9  times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
10 each breached their respective professional licensee duties, including their statutory
11 duties, by submitting to Downey false, inaccurate, incomplete and/or misleading
12 information in the six (6) loan applications herein alleged, such that the borrowers'
13 incomes, assets, debts and/or occupancy of the collateral property as their primary
14 residence were inaccurate, false, incomplete or materially misleading.

15      100.   Plaintiff is informed and believes and thereon alleges that at all relevant
16 times alleged herein Downey reasonably relied on the accuracy and completeness of
17 the six (6) loan applications herein alleged that Amerifund, Anderson, Mauricio,
18 Howell, Pacheco and Smith prepared, compiled and submitted to Downey and,
19 consequently, Downey approved and funded the six (6) loans as herein alleged.

20      101.   Plaintiff is further informed and believes and thereon alleges that at all
21 relevant times alleged herein Amerifund and Anderson negligently failed to properly
22 train and supervise the activities of their sub-agents, Mauricio, Howell, Pacheco and
23 Smith, as they performed services related to the preparation and submittal of the six
24 (6) loan applications to Downey, as herein alleged. Consequently, Plaintiff is
25 informed and believes and on thereon alleges that at all relevant times alleged herein
26 Amerifund and Anderson are vicariously liable for each of the acts and omissions
27 committed by Mauricio, Howell, Pacheco and Smith, the licensed salespersons who
28 worked for and under the direct supervision of Amerifund and Anderson, the licensed

-25-

1 real estate brokers that were permitted by law and contract to submit real estate
2 secured loan applications to Downey.

3     102.   Plaintiff is informed and believes and thereon alleges that as a direct and
4 proximate result of the negligent acts and omissions of Amerifund, Anderson,
5 Mauricio, Howell, Pacheco and Smith, and each of them, Plaintiff as Downey's
6 Receiver is entitled to recover damages from said defendants, as follows:  from
7 Amerifund and Anderson, the combined sum of $1,193,271; from Mauricio, the sum
8 of $459,065; from Howell, the sum of $89,900; from Pacheco, the sum of $199,413;
9 and from Smith, the sum of $270,146 or, all according to proof at trial, together with
10 prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed
11 by law.

12                         **VI.  COUNT THREE**
13                  **NEGLIGENT MISREPRESENTATION**
14      **(Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)**

15     103.   Plaintiff incorporates by this reference paragraphs 1 through 87 above as
16 though set forth in full hereat.

17     104.   In committing the acts and omissions hereafter complained of in Counts
18 Three and Four, Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith, and
19 each of them, performed the following roles in compiling, preparing and presenting
20 the six (6) loan applications alleged herein to Downey:

21           (a)  Anderson was the primary or majority shareholder, officer,
22 branch manager and responsible licensed officer who operated, managed and
23 supervised the day-to-day business operations of Amerifund.

24           (b)  Anderson was the President, Chief Executive Office and
25 qualifying broker of Amerifund through his broker's license (#01258703) by which
26 Amerifund became qualified to hold its own broker's license with the California DRE
27 (#01370682).

28           (c)  Mauricio was a licensed salesperson (#01378415) working

1 | under Amerifund's broker's license.

2 |      (d)   Howell was a licensed salesperson (#01452753) working
3 | under Amerifund's broker's license.

4 |      (e)   Pacheco was a licensed salesperson (#01335541) working
5 | under Amerifund's broker's license.

6 |      (f)   Smith was a licensed salesperson (#01364156) working
7 | under Amerifund's broker's license.

8 |      (g) As Amerifund's qualifying broker, it was Anderson's
9 | responsibility in 2005 and 2006 to oversee, direct and supervise all of the mortgage
10 | brokering business activities of Amerifund, including the activities of Mauricio,
11 | Howell, Pacheco and Smith, Amerifund's employees and sub-agents. In particular,
12 | Anderson was responsible for overseeing, directing and supervising the licensed
13 | salespersons who worked as "Loan Officers" at Amerifund in order to insure that the
14 | loan applications they submitted to Downey were consistent with the warranties and
15 | representations set forth in the Brokerage Agreements Amerifund and Anderson had
16 | with Downey and with applicable law; specifically, the requirement that Amerifund's
17 | employees and sub-agents collect accurate financial information from mortgage loan
18 | applicants and put that financial information accurately into the loan applications
19 | being submitted to Downey.

20 |      (h) Plaintiff is informed and believes and thereon alleges that
21 | Mauricio, Howell, Pacheco and Smith, as the licensed salespersons and Loan Officers
22 | working for and under Amerifund and Anderson as the licensed brokers, were
23 | responsible for interviewing the loan applicants, as hereinabove alleged, for the
24 | purpose of obtaining accurate financial information that was required to complete
25 | their loan applications. Moreover, Anderson, Mauricio, Howell, Pacheco and Smith
26 | were the last employees and sub-agents of Amerifund and Anderson who saw the
27 | completed loan applications and who signed off on the loan applications on behalf of
28 | Amerifund before they were sent to Downey and they were the employees and sub-

-27-

1  agents of Amerifund and Anderson who caused the six (6) loan applications
2  hereinabove alleged to be submitted to Downey.

3         (i)     Plaintiff is informed and believes and thereon alleges that
4  Amerifund and Anderson either expressly or impliedly approved, ratified, guided,
5  instructed, trained, supervised, instructed and/or authorized Mauricio, Howell,
6  Pacheco and Smith to either (i) to ignore the true facts that had been provided by the
7  borrowers on the six (6) loan applications alleged herein; or, (ii) not to conduct any
8  reasonable investigation into the accuracy of the financial information that was
9  provided to them by the six (6) borrowers alleged herein.

10        (j) Plaintiff is informed and believes and thereon alleges that in
11 preparing and submitting the loan applications of the six (6) borrowers alleged herein
12 to Downey, that Amerifund, Anderson, Mauricio, Howell, Pacheco, and Smith each
13 knew, or should have known, that they were breaching the express warranties and
14 representations contained in the Brokerage Agreements and were breaching their
15 duties as professional licensees of the California DRE, because they knew the
16 financial statements in the six (6) loan applications were false or, said defendants had
17 no reasonable basis for believing the financial statements were true and correct, as
18 they had warranted and represented to Downey.

19        105.  Plaintiff is informed and believes and thereon alleges that at all relevant
20 times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
21 each owed Downey a statutory and contractual duty of care in gathering, preparing
22 and submitting to Downey the financial information that was stated in the six (6) loan
23 applications herein alleged.  Further, at all times alleged herein, said licensed
24 defendants undertook an affirmative duty to insure the accuracy of the information
25 submitted to Downey and, in connection with those six (6) loan applications, said
26 defendants warranted, represented and certified that the financial statements in the
27 loan applications were true and correct.

28        106.  Plaintiff is informed and believes and thereon alleges that at all relevant

-28-

1   times alleged herein the information and other representations contained in the six (6)
2   loan applications herein alleged contained materially false, incorrect and misleading
3   financial information concerning the borrowers' incomes, assets, debts and/or
4   intention to occupy the collateral properties as their primary residences; and,
5   therefore, the six (6) loan applications were materially false, incorrect and misleading.

6       107.   Plaintiff is informed and believes and thereon alleges that at all relevant
7   times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
8   made the representations to Downey that are set forth in the six (6) loan applications
9   they submitted to Downey without having reasonable grounds for believing those
10  representations to be true at the time.

11      108.   Plaintiff is further informed and believes and thereon alleges that at all
12  relevant times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and
13  Smith each knew the facts relative to the financial condition of the borrowers with
14  whom each was working in connection with the six (6) loan applications herein
15  alleged; but, said defendants actively concealed or failed to disclose to Downey the
16  facts that the Defendants knew were not known by Downey at the time. Further,
17  Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith each had a duty to
18  disclose those suppressed facts to Downey because, without them, said defendants
19  knew that Downey would be misled into believing that the six (6) borrowers were
20  capable of repaying the loans that Downey made to each of them.

21      109.   Plaintiff is informed and believes and thereon alleges that at all relevant
22  times alleged herein Downey reasonably relied on the accuracy and completeness of
23  the financial information set forth in the six (6) loan applications that the defendants
24  prepared and submitted to Downey.  Downey's reliance on the accuracy and
25  completeness of the financial information was reasonable because of the statutory,
26  contractual and common law duties that were owed to it by Amerifund, Anderson,
27  Mauricio, Howell, Pacheco and Smith, and because of the civil and criminal penalties
28  that could accrue against said defendants if the information contained in the Loan

-29-

1  Applications was materially false, incomplete or inaccurate. Further, Amerifund,
2  Anderson, Mauricio, Howell, Pacheco and Smith each knew and intended for Downey
3  to rely on the accuracy of the financial information set forth in the loan application(s)
4  that each was responsible for submitting to Downey and said defendants knew that
5  Downey would so rely.

6      110. Plaintiff is informed and believes and on thereon alleges that at all
7  relevant times alleged herein Amerifund and Anderson are jointly vicariously liable
8  for each of the acts and omissions committed by their sub-agents and employees,
9  including Mauricio, Howell, Pacheco and Smith, whom Amerifund and Anderson
10 hired, trained and supervised at the time the six (6) loan applications were submitted
11 to Downey.

12     111. Plaintiff is informed and believes and thereon alleges that as a direct and
13 proximate result of the negligent misrepresentations and the negligent suppression of
14 materials facts from Downey by Amerifund, Anderson, Mauricio, Howell, Pacheco
15 and Smith, that Plaintiff as Downey's Receiver has been damaged by Amerifund and
16 Anderson in the combined sum of $1,193,271; from Mauricio, the sum of $459,065;
17 from Howell, the sum of $89,900; from Pacheco, the sum of $199,413; and from
18 Smith, the sum of $270,146, or, all according to proof at trial, together with
19 prejudgment interest on Plaintiff's liquidated damages at the maximum rate allowed
20 by law.

21                    **VII. COUNT FOUR**
22                          **FRAUD**
23    **(Against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith)**
24     112. Plaintiff incorporates by this reference paragraphs 1 through 87 and
25 paragraphs 104 through 111 above as though fully set forth hereat.

26     113. Plaintiff is informed and believes and thereon alleges that at all relevant
27 times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
28 together conspired to obtain the six (6) loans herein alleged from Downey by

-30-

1  knowingly making materially false statements concerning the borrowers' respective
2  incomes, assets, debts and/or occupancy of the properties that secured repayment of
3  the loans.

4      114.   Plaintiff is informed and believes and thereon alleges that at all relevant
5  times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
6  made to Downey the material misrepresentations contained in the six (6) loan
7  applications knowing that the facts therein stated were false.

8      115.   Plaintiff is informed and believes and thereon alleges that at all relevant
9  times alleged herein Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
10 either (a) intended to deceive Downey into relying on the accuracy of the financial
11 information stated in the six (6) loan applications and inducing Downey to make the
12 loans to the borrowers for said defendants' profit and gain; or (b) breached their
13 professional duties that each owed to Downey in order to gain an advantage over
14 Downey by misleading it, to its prejudice, into making the six (6) loans to the
15 borrowers.

16     116.   Plaintiff is informed and believes and thereon alleges that at all relevant
17 times alleged herein Downey reasonably relied on the accuracy and completeness of
18 the facts stated in the six (6) loan applications and that reliance led to Downey
19 approving and funding the loans to said borrowers, to Downey's resulting damage, as
20 herein alleged.

21     117.   Plaintiff is informed and believes and thereon alleges that Amerifund,
22 Anderson, Mauricio, Howell, Pacheco and Smith each played prominent roles in a
23 joint conspiracy to obtain the six (6) loans from Downey by mis-stating the incomes,
24 assets, debts and occupancies of the borrowers, as hereinabove alleged.  That
25 conspiracy involved Anderson, Mauricio, Howell, Pacheco and Smith either (a)
26 obtaining accurate financial information from the borrowers and then deliberately
27 ignoring that true financial information; or, (b) deliberately failing to conduct a
28 reasonable investigation into the accuracy of the financial information that was

-31-

1  provided by the borrowers. Instead, pursuant to the conspiracy of Amerifund,
2  Anderson, Mauricio, Howell, Pacheco and Smith, false and inaccurate financial
3  statements were placed into the six (6) loan applications that were then submitted to
4  Downey.

5      118.  Plaintiff is informed and believes and thereon alleges that Amerifund,
6  Anderson, Mauricio, Howell, Pacheco and Smith each guided the operation of their
7  conspiracy that caused false and misleading financial statements to be placed into the
8  six (6) loan applications that were submitted to Downey. Plaintiff is informed and
9  believes and thereon alleges said defendants furthered the fraudulent scheme they
10 orchestrated to obtain the loans from Downey by: (a) completing, executing and
11 submitting the six (6) loan applications; (b) completing the six (6) loan applications of
12 the borrowers with deliberately inaccurate information without giving the borrowers a
13 reasonable opportunity to review the contents of their loan application prior to signing
14 them; (c) signing or authorizing the signing of the Loan Applications and then
15 submitting them to Downey pursuant to Amerifund's written warranty and
16 representation that the financial statements contained therein were true and correct and
17 that the defendants had undertaken a reasonable investigation in making that
18 determination; and (d) Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith
19 each acted as the agents of one another in carrying out their fraudulent conspiracy
20 against Downey.

21     119.  Plaintiff is informed and believes and thereon alleges that as a direct and
22 proximate result of the fraudulent acts and omissions of Amerifund, Anderson,
23 Mauricio, Howell, Pacheco and Smith, and each of them, Plaintiff as Downey's
24 Receiver has been damaged by Amerifund and Anderson in the combined sum of
25 $1,193,271; from Mauricio, the sum of $459,065; from Howell, the sum of $89,900;
26 from Pacheco, the sum of $199,413; and from Smith, the sum of $270,146 or, all
27 according to proof at trial, together with prejudgment interest on Plaintiff's liquidated
28 damages at the maximum rate allowed by law.

-32-

1    120.   Plaintiff is informed and believes and thereon alleges that at all relevant
2    times alleged herein the acts and conduct of Amerifund, Anderson, Mauricio, Howell,
3    Pacheco and Smith, and each of them, were done with a conscious disregard of
4    Downey's rights and with a specific intent to defraud and injure Downey, such as to
5    constitute fraud, oppression, and malice.  By virtue of said defendants' willful and
6    wrongful conduct, Plaintiff as Downey's Receiver is entitled to an additional award of
7    punitive and exemplary damages in an amount according to proof at trial.

8    ## VIII.  COUNT FIVE

9    ### PROFESSIONAL NEGLIGENCE

10   **(Against Appraisers Rudd, Page, Peterson, Ohanlon and Slinger)**

11    121.   Plaintiff incorporates by this reference paragraphs 1 through 87 above as
12   though fully set forth hereat.

13    122.   Plaintiff is informed and believes and thereon alleges that at all relevant
14   times alleged herein defendants MICHAEL RUDD, an individual ("Rudd"), CURTIS
15   PAGE, an individual ("Page"), ELIZABETH PETERSON, an individual ("Peterson"),
16   Tom Ohanlon, an individual ("Ohanlon"), and John D. Slinger, an individual
17   ("Slinger") (jointly, "Appraisers"), were each licensed by the California DRE as
18   appraisers and each was a professional who owed a duty of care to Downey in
19   submitting appraisal reports on which said professionals knew and intended Downey
20   to rely.  The Appraisers, and each of them, owed Downey a duty to use reasonable
21   care, skill and diligence in submitting their appraisal reports containing information on
22   the then value of the properties that would secure repayment of the Norman Loan and
23   Worthy Loan, as hereinabove alleged.  Further, at all relevant times alleged herein, the
24   Appraisers, and each of them, were bound by the Uniform Standards for Professional
25   Appraisal Practice ("USPAP"), which sets forth the standard of care the Appraisers
26   were to follow in rendering their appraisal reports.

27    123.   At all times herein alleged, the Appraisers, and each of them, had
28   solicited, applied to, and been approved by Downey and were placed upon Downey's

-33-

1  Approved Appraiser List, from which Downey required that its approved mortgage
2  brokers, such as Amerifund, select an appraiser to render an appraisal report in
3  connection with each loan application the broker submitted to Downey.
4  Consequently, the Appraisers, and each of them, knew and intended that their
5  appraisal report would be submitted to Downey and each of the Appraisers knew and
6  intended that Downey consider, review and rely upon the accuracy of the appraisal
7  reports in making its decision whether or not to approve the loan application for which
8  purpose the appraisal reports were supplied..

9      124.  Plaintiff is informed and believes and thereon alleges that at all relevant
10 times alleged herein the Appraisers each breached their respective professional duties,
11 including statutory duties, by submitting to Downey inaccurate, incomplete and/or
12 misleading information in the following appraisal reports and in the following
13 particulars:

14          A.      Norman Property – 4349 W. Vasser Ave., Fresno, CA

15               (i)      An appraisal report on the Norman Property was rendered
16 effective July 20, 2005 by Rudd ("Rudd Appraisal"), who therein concluded that the
17 Norman Property had a market value on that date of $340,000.

18               (ii)      Downey thereafter requested that Page review Rudd's
19 appraisal, which Page did on or about September 13, 2005 ("Page Review
20 Appraisal"). In the Page Review Appraisal Page concluded that the Rudd Appraisal
21 was accurate, the comparables appeared to be reliable indicators of the property's
22 value and Page agreed that the market value of the Norman Property was $340,000.

23               (iii)      In actuality, in rendering their respective reports to Downey,
24 Rudd and Page each violated USPAP Standards Rule 2-1(a) by misleading Downey
25 concerning available comparables. All but two of the comparables were located over
26 one mile from the Norman Property. Rudd represented, and Page agreed, that using
27 comparables that distance away was necessary in order to locate resales of new
28 properties. However, those statements were misleading in that in actuality there were

-34-

1  over 20 recent sales of comparable properties within .25 miles of the Norman Property
2  (including four on the same street). By using inappropriate comparable data, the value
3  of the Norman Property was inflated.

4           (iv)    In actuality, in rendering their respective reports to Downey,
5  Rudd and Page each violated USPAP Standards Rule 1-1(a)(b) by incorrectly
6  employing recognized methods and techniques that are necessary to produce a
7  credible appraisal and by committing substantial errors of omission that significantly
8  affected the appraisals. Specifically, Rudd and Page did not report the comparables
9  correctly and adjustments were not consistently applied. Further, Rudd and Page both
10 failed to discuss the irrational appreciation that occurred in the Norman Property
11 neighborhood during the first half of 2005 (30-50% inflation), which was obviously
12 not sustainable nor consistent with longer term appreciation that was demonstrated by
13 other comparables that showed only 3-4% appreciation over the two years preceding
14 the reports.

15          (v)     In actuality, in rendering their respective reports to Downey,
16 Rudd and Page each violated USPAP Standards Rule 1-5(b) by failing to analyze any
17 sales of the Norman Property that occurred within the three years prior to their reports.
18 The previous sale of the Norman Property was not discussed or analyzed by either
19 appraiser. Said analysis indicates that the Norman Property's reported value equated
20 to a 39% increase in value in just over four months, or 10% a month. That rate of
21 increase was not supported by a reasonable interpretation of the available data.

22          (vi)    In actuality, in rendering their respective reports to Downey,
23 Rudd and Page each violated USPAP Standards Rule 2-2(b)(ix) by failing to analyze
24 information concerning immediate market conditions and sales in competing nearby
25 tracts (.05 - .15 miles).

26

27          B.      Worthy Property – 8425 Innsdale Lane, San Diego, CA

28          (i)     An appraisal report on the Worthy Property was rendered

-35-

1 effective December 6, 2005 by Peterson, under the direct supervision of Ohanlon
2 ("Peterson/Ohanlon Appraisal"), who therein concluded that the Worthy Property had
3 a market value on that date of $500,000.

4             (ii)    Downey thereafter requested that Slinger review the
5 Peterson/Ohanlon Appraisal, which Slinger did on or about December 23, 2005
6 ("Slinger Review Appraisal"). In the Slinger Review Appraisal Slinger concluded
7 that the Peterson/Ohanlon Appraisal was complete, accurate and the comparables
8 were most similar to the Worthy Property and Slinger agreed that the market value of
9 the Worthy Property was $500,000.

10             (iii)   In actuality, in rendering their respective reports to Downey,
11 Peterson/Ohanlon and Slinger each violated USPAP Standards Rule 2-1(a) by
12 misleading Downey concerning the total rooms in the Worthy Property and available
13 comparables. By using misleading data, the value of the Worthy Property was
14 inflated.

15             (iv)   In actuality, in rendering their respective reports to Downey,
16 Peterson/Ohanlon and Slinger each violated USPAP Standards Rule 1-1(a)(b) by
17 incorrectly employing recognized methods and techniques that are necessary to
18 produce a credible appraisal and by committing substantial errors of omission that
19 significantly affected the appraisals. Specifically, Peterson/Ohanlon and Slinger did
20 not adjust the comparables appropriately, land area was not addressed and the size
21 differential between the Worthy Property and the comparables was not adjusted
22 downward sufficiently, thereby resulting in an overstated value. In so doing, similarly
23 sized comparables were ignored by Peterson/Ohanlon and Slinger, which would have
24 eliminated the need for an adjustment in the comparables.

25             (v)    In actuality, in rendering their respective reports to Downey,
26 Peterson/Ohanlon and Slinger each violated USPAP Standards Rule 1-5(b) by failing
27 to analyze any sales of the Worthy Property that occurred within the three years prior
28 to their reports. The previous sale of the Worthy Property was not discussed or

1 | analyzed by either appraiser. Said analysis indicates that the Worthy Property's
2 | reported value equated to a 67% increase in value in just over 2.5 years. That fact
3 | should have been analyzed by the defendants.

4 | (vi) In actuality, in rendering their respective reports to Downey,
5 | Peterson/Ohanlon and Slinger each violated USPAP Standards Rule 2-2(b)(ix) by
6 | failing to render reports to Downey that were consistent with their intended use and by
7 | failing to analyze information concerning immediate market conditions and sales
8 | which were plentiful in the immediate area during the time frame of the appraisal. In
9 | so doing, Peterson/Ohanlon and Slinger passed over more similarly sized
10 | comparables, which was not justified, and which resulted in an inflated value. There
11 | were three other comparable sales within .38 miles of the Worthy Property, which,
12 | based on the preponderance of the data, reflected a value well below $500,000 of
13 | similar sized homes.

14 |

15 | 125. Plaintiff is informed and believes and thereon alleges that at all relevant
16 | times alleged herein Downey reasonably relied on the appraisal reports of Appraisers
17 | and, consequently, Downey approved and funded the loans to Norman and Worthy in
18 | reliance on the accuracy of the appraisal reports the Appraisers had provided to
19 | Downey.

20 | 126. The failure the Appraisers to adhere to USPAP was not excused by
21 | Downey and constituted negligence *per se.*

22 | 127. As a direct and proximate result of the negligence of the Appraisers, and
23 | each of them, Plaintiff as Downey's Receiver has been damaged in the amount of
24 | $89,900 on the Norman Loan and $270,146 on the Worthy Loan, or in an amount
25 | according to proof at trial, together with prejudgment interest on Plaintiff's liquidated
26 | damages at the maximum rate allowed by law.

27 | ///

28 | ///

## IX. COUNT SIX

## BREACH OF CONTRACT

### (Against Borrowers Donovan, Gallegos, Norman and White)

128. Plaintiff incorporates by this reference paragraphs 1 through 87 above as though fully set forth herein.

129. At all times herein alleged, ANN K. DONOVAN, an individual ("Donovan"); CHRIS GALLEGOS, an individual and PAM GALLEGOS, an individual (jointly, "Gallegos"); ANTHONY NORMAN, an individual ("Norman"); and PETRA WHITE, an individual ("White") ( jointly, "Borrowers" or, singally "Borrower") each entered into written loan application contracts that were substantially performed by Downey in the County Orange, State of California.

130. Each of the Borrowers executed and entered into a written loan application contract with Downey by which each Borrower promised, represented and agreed that the financial statements set forth therein were true and correct as of the date each Borrower signed their loan application. Specifically, each loan application contained a section "IX. Acknowledgement and Agreement" under which it provided, in pertinent part, as follows:

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of title 18, United States Code, Sec. 1001, et seq.;

1     131. Plaintiff is informed and believes and thereon alleges that at all relevant
2 times alleged herein Downey fully performed all of its duties to the Borrowers under
3 the loan application contracts by approving and funding loans to the Borrowers as
4 hereinabove alleged.

5     132. Plaintiff is informed and believes and thereon alleges that the Borrowers
6 breached their contractual duties that each owed Downey under their respective loan
7 application contracts by the Borrowers making untrue and incorrect financial
8 statements therein. Downey did not discover the Borrowers' breach of their
9 respective loan application contracts until after Downey had funded its loans to the
10 Borrowers and after the Borrowers had defaulted on their loans.

11     133. As a direct and proximate result of the Borrowers' breach of their
12 respective loan application contracts with Downey, Plaintiff as Downey's Receiver
13 has been damaged in the amount of $113,760 on the Donovan Loan; $174,747 on the
14 Gallegos Loan; $89,900 on the Norman Loan; and $199,413 on the White Loan or, in
15 an amount to be proven at trial, together with prejudgment interest on Plaintiff's
16 liquidated damages at the maximum rate allowed by law.

17                          **X. COUNT SEVEN**
18                              **FRAUD**
19        **(Against Borrowers Donovan, Gallegos, Norman and White)**

20     134. Plaintiff incorporates by this reference paragraphs 128 through e as
21 though fully set forth hereat.

22     135. Plaintiff is informed and believes and thereon alleges that at all relevant
23 times alleged herein Donovan, Gallegos, Norman and White each knowingly made
24 materially false statements concerning their respective incomes, assets, debts and/or
25 occupancy of the subject properties in their written loan applications to Downey.

26     136. Plaintiff is informed and believes and thereon alleges that at all relevant
27 times alleged herein Donovan, Gallegos, Norman and White each made to Downey
28 the material misrepresentations contained in their respective loan applications to

-39-

1 the material misrepresentations contained in their respective loan applications to
2 Downey knowing that the facts therein stated concerning their incomes, assets, debts
3 and/or occupancy of the subject properties were not true and correct.

4     137. Plaintiff is informed and believes and thereon alleges that at all relevant
5 times alleged herein Donovan, Gallegos, Norman and White each either (a) intended
6 to deceive Downey into relying on the accuracy of the financial information stated in
7 each borrower's loan application and inducing Downey to make the loan to each
8 borrower, for the borrower's gain and benefit; or (b) breached their contractual and
9 statutory duties that each owed to Downey to be true and accurate in the financial
10 statements each borrower made to Downey in order to gain an advantage over
11 Downey by misleading it, to its prejudice, into making the loans to each borrower.

12     138. Plaintiff is informed and believes and thereon alleges that at all relevant
13 times alleged herein Downey reasonably relied on the facts stated in the six (6) loan
14 applications and that reliance led to Downey approving and funding a loan to each
15 borrower, to Downey's resulting damage.

16     139. Plaintiff is informed and believes and thereon alleges that as a direct and
17 proximate result of the separate fraudulent acts and omissions of Donovan, Gallegos,
18 Norman and White that Plaintiff as Downey's Receiver has been damaged in the
19 following amounts: as against Donovan, the sum of $113,760; as against Gallegos, the
20 sum of $174,747; as against Norman, the sum of $89,900; and as against White, the
21 sum of $199,413, or, in amounts to be proven at trial, together with prejudgment
22 interest on Plaintiff's liquidated damages at the maximum rate allowed by law.

23     140. Plaintiff is informed and believes and thereon alleges that at all relevant
24 times alleged herein the acts and conduct of Donovan, Gallegos, Norman and White,
25 and each of them, were done with a conscious disregard of Downey's rights and/or
26 with a specific intent to defraud and injure Downey, such as to constitute fraud,
27 oppression, and malice. By virtue of said defendants' willful and wrongful conduct,
28 Plaintiff as Downey's Receiver is entitled to an additional award of punitive and

-40-

## XI. **PRAYER**

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

### AS TO COUNT ONE

1.     For damages against Amerifund and Anderson in the amount of $1,193,271 or according to proof at trial, together with prejudgment interest on said liquidated damages in the maximum rate allowed by law; and

2.     For reasonable attorneys' fees against Amerifund and Anderson according to proof at trial.

### AS TO COUNTS TWO, THREE AND FOUR

3.     For damages against Amerifund and Anderson in the combined sum of $1,193,271, against Mauricio in the sum of $459,065, against Howell in the sum of $89,900, against Pacheco in the sum of $199,413; and against Smith in the sum of $270,146 or according to proof at trial, together with prejudgment interest on said liquidated damages at the maximum rate allowed by law.

### AS TO COUNT FOUR AND SEVEN

4.     For punitive and exemplary damages against Amerifund, Anderson, Mauricio, Howell, Pacheco and Smith, in amounts to be proven at trial; and

5.     For punitive and exemplary damages against Donovan, Gallegos, Norman and White, in amounts to be proven at trial.

### AS TO COUNT FIVE

6.     For damages against Rudd and Page, jointly and severally, in the amount of $89,900 or according to proof at trial, plus prejudgment interest on said liquidated damages at the maximum rate allowed by law; and

7.     For damages against Peterson, Ohanlon and Slinger, jointly and severally, in the amount of $270,146 or according to proof at trial, plus prejudgment interest on said liquidated damages at the maximum rate allowed by law.

///

AS TO COUNT SIX

8.  For damages against Donovan in the amount of $113,760 or according to proof at trial, plus prejudgment interest on said liquidated damages in the maximum rate allowed by law;

9.  For damages against Gallegos in the amount of $174,747 or according to proof at trial, plus prejudgment interest on said liquidated damages in the maximum rate allowed by law;

10. For damages against Norman in the amount of $89,900 or according to proof at trial, plus prejudgment interest on said liquidated damages in the maximum rate allowed by law; and

11. For damages against White in the amount of $199,413 or according to proof at trial, plus prejudgment interest on said liquidated damages in the maximum rate allowed by law.

AS TO ALL CAUSES OF ACTION

12. For costs of suit incurred and to be incurred; and

13. For such other relief as the Court deems just and proper.

DATED: June 3, 2011                    **HERSHORIN & HENRY LLP**


By:_____
                    JEAN C. WILCOX
                    CLAUDIA MOURAD
                    LORI C. HERSHORIN
                    Attorneys for Plaintiff,
                    FEDERAL DEPOSIT INSURANCE
                    CORPORATION, as Receiver for
                    Downey Savings & Loan Association,
                    F.A.

-42-
COMPLAINT FOR DAMAGES

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury, pursuant to Federal Rules of Civil Procedure, Rule 38 (b) and Local Rule 38-1.

DATED: June 3, 2011          **HERSHORIN & HENRY LLP**

By:_____

JEAN C. WILCOX
CLAUDIA MOURAD
LORI C. HERSHORIN
Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Downey Savings & Loan Association,
F.A.

-43-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge **DAVID O. CARTER**
and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

### SACV11- 840 DOC (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Jean C. Wilcox, Esq. (SBN 97963)
HERSHORIN & HENRY, LLP
27422 Portola Parkway, Suite 360
Foothill Ranch, CA 92610
(949) 859-5600

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F.A. | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **SACV11-840 DOC(RNBx)** |
| v. | |
| AMERIFUND FINANCIAL, INC., a California corporation (SEE ATTACHED LIST) | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, HERSHORIN & HENRY, LLP_____, whose address is 27422 Portola Parkway, Suite 360, Foothill Ranch, CA 92610_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___(0-3-11___

By: ___Nancy Casino___     **SEAL**
         Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

SUMMONS- Attachment

Defendants:

AMERIFUND FINANCIAL, INC., a California corporation; ERIC MATTHEW
ANDERSON, an individual; MICHAEL DALE MAURICIO, an individual;
ANDRE WISHON HOWELL, an individual; MOISES PACHECO, an individual;
SAMUEL ASHBY SMITH, an individual; MICHAEL RUDD, an individual;
CURTIS PAGE, an individual; ELIZABETH PETERSON, an individual; TOM
OHANLON, an individual; JOHN D. SLINGER, an individual; ANN K.
DONOVAN, an individual; CHRIS GALLEGOS, an individual; PAM
GALLEGOS, an individual; ANTHONY NORMAN, an individual; PETRA
WHITE, an individual

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| **I (a) PLAINTIFFS** (Check box if you are representing yourself □) FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Downey Savings and Loan Association, F A | **DEFENDANTS** SEE ATTACHED LIST |
|---|---|

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) HERSHORN & HENRY, LLP 27422 Portola Pkwy., #360, Foothill Ranch, CA 92610 (949) 859-5600 | Attorneys (If Known) Not Known |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ☑ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No    ☑ **MONEY DEMANDED IN COMPLAINT:** $ 1,193,271

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 USC 1819(a), 12 USC 1819(b)(2)(A) and USC 1345- FDIC is an agency of the United States with power to sue and U.S. District Court has original Jurisdiction

**VII. NATURE OF SUIT (Place an X in one box only.)**

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV11-840 DOC(RNBx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CIVIL CASE COVER SHEET- Continuation

Defendants:

AMERIFUND FINANCIAL, INC

ANDERSON, ERIC MATTHEW

MAURICIO, MICHAEL DALE

HOWELL, ANDRE WISHON

PACHECO, MOISES

SMITH, SAMUEL ASHBY

RUDD, MICHAEL

PAGE, CURTIS

PETERSON, ELIZABETH

OHANLON, TOM

SLINGER, JOHN D.

DONOVAN, ANN K.

GALLEGOS, CHRIS

GALLEGOS, PAM

NORMAN, ANTHONY

WHITE, PETRA